INTERNATIONAL REGISTER CO. v. RECORDING FARE REGISTER CO. et al.

(Circuit Court, D. Connecticut. July 21, 1905.)

No. 1,121.

1. GOOD WILL—SALE—WRONGFUL DIVERSION OF CONTRACT—IMPROPER USE OF PROPERTY.

Defendants, who had been employés of a manufacturing company which had sold its business and good will to complainant, found a sketch and a pattern necessary to be used in filling certain orders given to the selling company and transferred to complainant, and, with knowledge that they had been left by an officer of complainant through mistake, attempted to use the same, to divert such orders to a company formed by themselves, having knowledge of the orders through their connection with the former company. *Held*, that complainant was entitled to an injunction to restrain defendants from such use of its property to deprive it of its contracts.

2. SAME—WRONGFUL USE OF INFORMATION OBTAINED BY EMPLOYÉ.

Defendants were employés of a manufacturing company which sold its business, good will, and contracts on hand to complainant. Prior to the sale the company had been negotiating for a certain contract through one of defendants as its agent, and on the day of the sale it received a letter asking that a man be sent to close the contract. This letter was turned over to complainant, which asked such defendant to go as its representative to complete the contract. Without refusing to go, said defendant delayed, and in the meantime secured the contract for a company formed by himself and his codefendants by means of the information secured while in the employ of the former company, and from the letter to it. *Held*, that the information so obtained was property of the complainant, which it had purchased, and which defendants had no right to use for their own benefit and to its detriment, and that under the facts shown complainant was entitled to recover the profits made by defendants on the contract.

In Equity.

Walter Carroll Low and Newton, Church & Hewitt, for complainant.

White, Daggett & Tilson, for defendants.

PLATT, District Judge. The substance of the bill is as follows: That the New Haven Car Register Company since 1891, had made and sold fare registers and street railway supplies at New Haven under various secret inventions, drawings, sketches, and United States patents. That on March 14, 1903, said company sold to the complainant its business, good will, outstanding contracts, and other property. That the defendants, Littlejohn, Kennedy, Yates, and Hayes, had been employed by the New Haven Car Register Company, and upon said sale conspired together fraudulently to appropriate the good will of said company. That in pursuance of such

conspiracy they took patterns, sketches, drawings, and orders which had been given to said company. That with wicked intent they notified the customers of said company that they were the successors in business of said company, and had secured 70 per cent. of the business formerly enjoyed by that company. That they were using and intended to use the property by them wrongfully taken to fill and complete orders which had been given to said company. That for these purposes they hurriedly formed a copartnership, and later the corporation defendant, with which the other defendants became associated. That, to deceive, they falsely stated to customers that they had taken over the accounts of various companies, and were selling agents for their goods in the same way that the former New Haven Company had been. That they notified customers that they were in position to make prompt shipments under the orders, patterns, and sketches of the New Haven Company, and were seeking to do so, and wrongfully sought to destroy the good will and property which complainant purchased from said New Haven Company. That on or about March 14th complainant requested defendant Hayes to attend to a certain order for equipping cars of the Boston Suburban Electric Companies. That he, conspiring with the other members of the company, took the order in their name, and for their use. That after March 14, 1903, the defendants have fraudulently sought to destroy the good will and property of said company, purchased by complainant as aforesaid, for their own profit. That they have in their possession orders, sketches, patterns, and property surreptitiously taken and withheld from the complainant, and are strenuously seeking to get complainant's business for their own use. The relief sought is: (1) An injunction; (2) the return of the property wrongfully taken and withheld; (3) an accounting for all work done under contracts secured entirely by or through information secured by them while in the employ of the New Haven Car Register Company.

The defense denies all allegations of fraud, hedges a little on the Porter & Berg sketch, and as to the Boston & Suburban order says that Hayes got that order first hand, after a full disclosure of all the facts, and especially after disclosing that he was no longer in the employ of the New Haven Car Register Company; and denies generally that defendants ever had in their possession any property belonging to the New Haven Car Register Company, or attempted to acquire its good will in any way.

Three questions present themselves: (1) Did the defendants, at or before the time the bill was filed, have in their possession any property belonging to the complainant which they undertook to get the benefit of in their business? (2) Did the complainant have a property right in the Boston & Suburban order, which was invaded by the defendants? (3) (And this grows out of and in connection with the second.) Did the defendants make a wrongful use of confidential information, obtained by them while in the employ of the New Haven Car Register Company, in such a way as to divert to their own enjoyment a contract which in the natural course of events would have been reaped by complainant?

It is unnecessary to analyze the proofs in extenso in order to establish the proposition that the first question must be answered in the affirmative. The story of the Porter & Berg sketch for the Tri-City order, as told by the defendant Kennedy, is enough, without more. Porter & Berg had sent the sketch of a bracket to the New Haven Car Register Company, which was to be used in getting out portions of an order given that company by the Tri-City Railway. After the sale to complainant this sketch was found by a shipping clerk on the floor, and handed to Kennedy, about March 25th. Kennedy, under the name of Recording Car Register Company, the copartnership formed by Yates, Hayes, Littlejohn, and himself, attempted to make very bad uses of this sketch, and of other things, but gave up the effort on April 4th. If Kennedy's story is the whole truth, he is not relieved from fault. He made a copy of the sketch, and tried to utilize it in diverting a portion of the Tri-City order from the complainant, who owned it by purchase. Drastic measures brought him and the others to book, but the complainant had learned enough about their actions to justify the demand for relief by injunction, and, as the matter stands, no harm can come from making the same permanent. Complainant's manager, Mr. Woodward, has not been guilty of any action in the Tri-City matter, or in any other respect, which disentitles him to seek relief in a court of equity. The doings of the defendants in connection with the Boston & Maine order are equally reprehensible. After defendant Hayes had been to Boston, and obtained the Boston & Suburban order, which will be discussed later, he wrote a letter to the Boston & Maine Railroad. While in the employ of the New Haven Car Register Company he had obtained an order for fixtures, and a certain bracket was to be changed in accordance with a blueprint. Hayes turned over the blueprint to the New Haven Car Register Company and a bracket was made from it by defendant Littlejohn. The matter had been explained by Kennedy to Brown, of the complainant company, and the bracket made with his knowledge. Just before starting for Chicago, Brown laid it on a radiator in the office, intending to take it in his satchel, but in the hurry of departure it was overlooked. After Brown had gone to Chicago, Hayes wrote the letter, in which he says that, much to his surprise, he found the pattern bracket in a box of junk; that he did not know whether the International people intended or cared to execute the order; that they had shipped all of the belongings of the New Haven Company to Chicago, and had overlooked that pattern, as well as many others; that his new enterprise could execute it promptly, in accordance with the agreement with the New Haven Company, and would do it in fine shape; and, in his opinion, the complainant (which at that moment confessedly owned the order) could not execute it "in less than five or six weeks, if then." When examined about this matter, he evaded the direct assertion contained in the letter that he found it in a box of junk, but said that he heard so from somebody, but never touched it. This was a deliberate attempt by the defendants to divert to their hastily formed enterprise a certain

order, which had been acquired by the New Haven Company at large expense, and sold to complainant for value; and they were only able to make the attempt because they could use information which had reached them by reason of their employment by the New Haven Company, and in making it they were using complainant's property. Defendants must have known that the bracket was left behind by the complainant's officers through oversight, and honest men would certainly have undertaken to restore the property at once to its rightful owner. This was not done, and it is almost inconceivable that such an attempt to make use of it as the admitted facts demonstrate could have been undertaken. That they tried to do what they did is an excellent reason for an order which will prevent similar acts hereafter. The first question is thus plainly solved in the affirmative.

The second and third questions are the really serious ones, and require careful thought. The facts bearing thereon can only be touched currente calamo, but the final conclusion reached is based upon a thorough scrutiny of the proofs. The Boston & Suburban Companies had been using the New Haven register for some time, and about a year prior to this trouble they had equipped a few cars with fixtures supplied by the New Haven Company. These worked so well that the companies decided to equip all their cars in the same way. Lewis, of the Boston Companies, had informed Hayes that he wished to equip his cars with New Haven Company fixtures, and early in March, 1903, the directors voted to equip all cars on their system with register rod fixtures of the style heretofore furnished them by the New Haven Company. This having been done, the matter was put in the hands of Mr. Henderson, of the companies, to arrange. On March 13, 1903, said Henderson wrote to the New Haven Car Register Company saying that his companies wished to equip the cars of all their lines with the New Haven Company's rod fixtures, and were in a hurry. He suggested that the New Haven Car Register Company send a man to Newtonville, Mass., on the following Monday, to look into it, and take measurements, after which the New Haven Company could furnish a complete list of what would be required, together with their best quotations. When this letter was written, an agreement existed between the New Haven Car Register Company and the Boston & Suburban Companies about prices on all registers, rods, etc. The letter was received by the New Haven Car Register Company on the 14th, and defendant Hayes was informed on that date of its contents, and knew it was in his line of work, because he had been familiar with all the details from the beginning of their dealings with the Boston & Suburban. March 16th was Monday, and on that day Mr. Woodward, of complainant company, asked Hayes if he would go to Newtonville and attend to the order. Hayes temporized, and delayed a definite answer, but does not claim that he refused to go. Up to Wednesday nothing definite had been reached, although Hayes then agreed to meet Wood, New England agent of complainant, on the morning of March 19th. Up to this time Mr. Woodward could only have known of Hayes' position in the

matter by inference. There had been no positive refusal to go. After getting the information about this matter from Woodward on Monday, the 16th, Mr. Hayes got into touch with a Mr. Townsend, of the Boston Companies, about the suggestions contained in the letter, and on March 18th wrote Townsend that he was struggling to get a company together, and as soon as things were in shape he would run up to see him, and asked Townsend to tell Lewis. Mr. Townsend was a personal friend of Mr. Hayes, had no direct connection with the equipment of the cars, and had not been approached by Mr. Hayes about the matter prior to this time. On March 19th Townsend telegraphed that Lewis was in a hurry; that Hayes had been expected the day before, and asking why he did not come. In reply to the telegram Hayes wrote, apologizing for his delay, and explaining that many things had come up, etc. He then proceeded to ask Townsend to tell Lewis that the complainant could not get out the fixtures for some weeks, that he was perfecting his own company, that as soon as he got it in shape he would come on and look after Lewis; and on the same day (March 19th) telegraphed Townsend, "Will take care of Lewis. Have written you." On that same day (March 19th) Townsend wrote Hayes that Lewis must have his fixtures at once, and unless Hayes came the next day he would place the order elsewhere. Hayes went to Boston the next day, saw Townsend and Lewis, and got the order for his own little company, which had been organized with such speed. It is a fair inference that the size and importance of the Boston order had much to do with the celerity which characterized the getting up of the little company. Complainant's Mr. Wood had been told to send a man to measure the cars, but after the deal with Hayes he was directed not to do so. Order was given Hayes on March 23d. On same day Lewis wrote to complainant, asking for a confirmation of special prices made in agreement with the New Haven Car Register Company, stating in a postscript that arrangements had been made for rods, fixtures, and installation of their last order of registers. The prices in the Hayes order were based upon and agreed with the prices at which the New Haven Company had been supplying fixtures for former installations of registers. In these circumstances it appears that the New Haven Car Register Company came very close, indeed, to getting an order, but I do not think that they did exactly get it. The delays incident to the shifting of business and Mr. Hayes' personality entered into the equation, and just prevented an absolute, complete, unequivocal order. There are, however, sufficient reasons why the defendants had no right to obtain and execute the Boston order. First, Mr. Hayes had been paid by the New Haven Car Register Company for his services in advancing the business to the stage it had reached, and it was only by making use of private information which had reached that company through Mr. Hayes' efforts that he was enabled to divert the business to the uses of himself and companions. And again, during all the time which he spent in gathering the Boston connection around his new company, he was, by his own admissions, under contract to the

New Haven Company. In the last analysis, the defendants cannot escape, even if it be admitted that no valid reason has yet been presented for holding their action in relation to the Boston order illegal. Hayes would have been in no position to obtain the Boston order for himself and friends if he had not learned from the letter to the New Haven Car Register Company that the directors of the Boston Companies had voted to obtain the fixtures from the New Haven Company. He made use of private advance information, obtained by the New Haven Company at large expense, conveyed to him by Mr. Woodward, agent of the complainant, who had purchased that information from the New Haven Company. The information was property, and was capable of sale. It was such a kind of property that it furnished the necessary basis for getting the Boston business. By using this valuable property, which he knew belonged to another, Mr. Hayes was able to divert and appropriate to the defendants the profits of the Boston equipment, and the fruits thereof belong in equity and good conscience to the complainant, which acquired that valuable property by purchase. In the case of Hayes it is the more objectionable to reap the fruits of the information, because he was paid to obtain it, but those who joined with him, knowing the situation, cannot escape the odium which attaches to him. They are tarred with the same brush. Upon careful review, it is clear that the original injunction was warranted by the proofs, and upon the merits it is equally clear that it should be made permanent. The matter of the Boston & Suburban Companies order must go to a master for an accounting.

Upon the motion for contempt, I do not think the original injunction order was made specific enough to remove a reasonable doubt from the defendants' minds as to whether the filling of the Boston order would be a violation. It is not the purpose of this court to permit the advice of counsel to relieve the parties enjoined from the consequences of their acts; but in this matter, and in the circumstances, it does not appear that such advice in any way infringed upon the duties which counsel owe to the court as officers thereof. It is believed that the penalties which this decree inflicts upon the defendants are entirely ample.